UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL C. GRIMMETT,

      Plaintiff,                            Case No. 13-cv-13704
                                            Hon. Matthew F. Leitman

v.

DONALD DACE et al.,

      Defendants.
_____/

**OPINION AND ORDER (1) DENYING PLAINTIFF'S MOTION TO
REMAND AND AWARD ATTORNEY FEES AND COSTS (ECF #7) AND
(2) GRANTING DEFENDANTS' MOTION TO DISMISS AND FOR
SUMMARY JUDGMENT (ECF #8)**

**INTRODUCTION**

After his condominium flooded in 2009, Plaintiff Michael C. Grimmett

("Grimmett") sought legal assistance from the UAW-GM Legal Services Plan (the

"Plan"). The Plan is an employee benefit program provided to certain union

members pursuant to a collective bargaining agreement. The Plan's attorneys

ultimately represented Grimmett in a lawsuit against his condominium association.

Grimmett now alleges that the Plan and three of its employees (collectively, the

"Defendants") committed legal malpractice and/or breached their fiduciary duties

in handling his case. Grimmett filed suit against Defendants on August 29, 2013.

Defendants removed the action to this Court. Two motions are now pending: (1)

Grimmett has moved to remand the action to state court and for an award of attorney fees, and (2) Defendants have moved for dismissal or summary judgment. For the reasons explained below, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendants' Motion.

## FACTUAL BACKGROUND

### A. The Parties

#### 1. Grimmett

Since approximately 1976, Grimmett has worked at General Motors ("GM"). (*See* Tr. Transcript Part 1, ECF #9-4 at 170, Pg. ID 686.) His current job title is Senior Design Engineer. (*See* Richelle Hall First Aff., ECF #8-9 at ¶8, Pg. ID 228.)   Grimmett is a member of the United Automobile, Aerospace and Agricultural Workers of America (the "UAW"). (*See* Compl., ECF #1-2 at ¶1, Pg. ID 23.)  As a result of his membership in the UAW, Grimmett is a participant in the Plan. (*See id.  See also* Legal Services Plan, ECF #8-14.)

#### 2. The Plan

The Plan "is a collectively bargained group program" that "was established by an agreement between [GM] and the UAW in order to provide high quality legal counsel to hourly-rated employees represented by the UAW in GM plants across the United States." (Summary Plan Description, ECF #8-15 at 3, Pg. ID 267.)  The Plan provides certain legal services to covered GM employees at no cost

2

to participants.  (*Id.* at 9, Pg. ID 273.)  The Plan is governed by the Employees'
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*
(Notice of Removal, ECF #1 at ¶5.)

### 3. Defendants Richelle C. Hall ("Hall") and Carol Birnkrant ("Birnkrant")

Hall is the Managing Attorney of the Plan's office in Pontiac, Michigan.
(Hall First Aff. at ¶1.)  Birnkrant is an attorney employed by the Plan.  (*See*
Birnkrant First Aff., ECF #8-2 at ¶1.)

### 4. Defendant Donald Dace ("Dace")

Dace is the Plan's Assistant Director for the Michigan Region.  (Dace Aff. at
¶¶1, 5.)  As an Assistant Director, Dace "is responsible for administering the Plan
[in Michigan] under the supervision of [the Plan's Director]."  (*Id.* at ¶4 (quoting
Legal Services Plan § 2.01, Pg. ID 243).)  Dace's job includes reviewing internal
appeals brought by Plan participants and recommending decisions to the Director.
(*Id.* at ¶5.)  Dace has "authority over Plan assets, such as the Plan attorneys
assigned to [his] supervision and the authority to authorize Plan expenditures."
(*Id.*)

## B. Grimmet's Lawsuit Against His Condominium Association

In November 2009, Grimmett entered his apartment in the Hidden Hills
Condominium Association ("Hidden Hills") in Rochester Hills, Michigan, and
found his basement flooded "with water and raw sewage."  (*See* Tr. Transcript Part

1 at 173-85, Pg. ID 689-701; Compl. at ¶11.)  Grimmett asserts that the flooding

caused more than $14,000 in property damage.  (Compl. at ¶11.)

Grimmett sought legal representation from the Plan, and "Birnkrant and Hall

… were appointed" as his attorneys.  (Compl. at ¶14.)  Birnkrant – on behalf of

Grimmet – filed suit against Hidden Hills the 52/3 District Court in Rochester Hills

seeking damages for the property loss.  (*Id.*)[1]  Grimmett's complaint alleged that

Hidden Hills was responsible for the sewer backup.  Grimmett asserted claims for

breach of contract, negligence, and breach of the Michigan Consumer Protection

Act.  (*Id*.)  Hidden Hills counterclaimed, alleging that Grimmett had breached a

confidential settlement agreement arising from litigation related to an earlier sewer

backup in Grimmet's apartment.  (Pla.'s Br. in Support of Pla.'s Mot., ECF #7 at

14, Pg. ID 95.)

The case was tried to a jury.  Both parties offered expert witness testimony

on the issue of the cause of the backup.  (*See*, *e.g.*, Tr. Transcript Part 1 at 38

(testimony of Jeffrey Dixon) and Tr. Transcript Part 2, ECF #9-5 at 14, Pg. ID 826

(testimony of Donald Pratt).)  On July 25, 2011, the jury found that Hidden Hills

was not liable on any of Grimmett's claims.  (Jury Verdict Form, ECF #8-7 at 1-4,

Pg. ID 208-211.)  The jury also found that Grimmett was not liable on Hidden

---

[1]  Hall joined Birnkrant in representing Grimmet on March 29, 2011, shortly before
the case went to trial.  (*See* Hall First Aff. at ¶10.)

Hills' breach of contract counterclaim.  (*Id.* at 4, Pg. ID 211.)  Accordingly, the jury did not award damages to either party.  (*Id.*)

## C. Hidden Hills' Motion for Costs

Following trial, Hidden Hills filed a motion seeking $4,560 in costs – including $4,370 in expert witness fees – incurred defending against Grimmett's suit.  (Compl. at ¶23.)  Birnkrant and Hall did not timely file a response to the motion for costs on Grimmett's behalf.  (Compl. at ¶22; Def.'s Br. in Support of Def.'s Mot., ECF #8 at 25, Pg. ID 171.)  The court granted Hidden Hills' unopposed motion for costs and ordered Grimmett to pay the full $4,560 that Hidden Hills had requested.  (Judgment on Bill of Costs, ECF #8-22 at 1, Pg. ID 352.)

## D. Grimmett's Internal Appeal and Waiver

The Plan has an internal, administrative appeals process for a participant who is dissatisfied with the Plan's handling of his case.  Specifically, "[a]ny Participant who, for any reason, is dissatisfied with any action or inaction of a Staff Attorney … has a right to complain in writing to the appropriate Assistant Director," who may then recommend approval or revision of the Staff Attorney's decision.  (Legal Services Plan, § 3.03.)  In Grimmett's case, Dace was the Assistant Director to whom he could direct an appeal.  (Dace Aff. at ¶¶5, 20.)

5

Consistent with the Plan's internal appeal process, in September 2011, Grimmett appealed Binkrant's and Hall's handling of his case to Dace. (Appeal Letters, ECF #8-23 and #8-24.)    Grimmett asserted that Birnkrant and Hall had committed legal malpractice and demanded that the Plan (1) pay the cost award to Hidden Hills and (2) pay him $9,500.[2] (*Id.*)

In response to Grimmett's appeal, Dace called Grimmett and offered that the Plan would "pay one half of the court costs awarded to Hidden Hills" in exchange for a written release of all claims against the Plan related to its representation of Grimmet in his case against Hidden Hills. (Dace Aff. at ¶22.)  Grimmett alleges that after he spoke with Dace he sent a letter to Hall stating that he felt that he was being "coerce[d] … to sign the waiver in order for the judgment [of costs against him] to get paid." (Grimmet Letter to Hall, ECF #7-5 at 2, Pg. ID 125.)[3]

At Grimmett's request, Grimmett met with Dace and other representatives of the Plan on October 10, 2011. (Dace Aff. at ¶23.)  At the meeting, Grimmett presented a written document with arguments in support of his appeal and his

---

[2]  Grimmett's demand was apparently in reference to a case evaluation panel's recommendation, prior to trial, that Grimmett receive $9,500 from Hidden Hills. (*See* Case Evaluation and Notice of Acceptance/Rejection of Award, ECF #8-19 at 7, Pg. ID 308.)

[3]  Defendants assert that they never received such letter (*See* Birnkrant Second Aff., ECF #13-4 at ¶8; Hall Second Aff., ECF #13-6 at ¶10.)  And there is no evidence in the record – such as an affidavit from Grimmett – that Grimmett ever in fact sent the letter.

claim of malpractice.  (*See* Appeal Meeting Submission, ECF #8-25; Dace Aff. at

¶24.)   After the meeting, Dace concluded that although "[t]here was no evidence

that [Birnkrant or Hall] had committed any acts of professional negligence … there

was a possibility the amount of the award [of costs against Grimmett] could have

been reduced."   (Dace Aff. at ¶25.)   On October 10, 2011, Dace informed

Grimmett that "the Plan had decided to propose paying the $4,560 cost award and

obtaining a release of claims from [Grimmett] as a resolution of his appeal." (*Id.* at

26.)

Thereafter, Grimmett signed a waiver and release (the "Release"), which he

submitted to the Plan.  (*See* Release, ECF #8-27 and ECF #8-28.)[4]   The Release

provided that Grimmett,

> in consideration of the payment by [the Plan] of the cost award of
> $4,560 … waive[d] any claims and fully and forever release[d]
> attorneys Carol Birnkrant and Richelle Hall and [the Plan], and any
> other of the Plan's employees, agents, supervisors and administrators,
> from any and all claims and causes of action … regarding
> representation provided [in Grimmett's action against Hidden Hills]
> … including any claim of negligence or professional negligence, or
> failure to provide services.

(Release, ECF #8-27 at 1, Pg. ID 366; ECF #8-28 at 1, Pg. ID 367.)  As provided

in the Release, on October 21, 2011, the Plan sent a payment of $4,560 to Hidden

---

[4]  Grimmett apparently returned two signed copies of the Release to the Plan – one
dated October 12, 2011, and the other dated October 20, 2011.  Other than the
dates, both copies of the release are identical.

Hills' attorneys in satisfaction of the cost award.  (Dace Aff. at ¶30.)  Grimmett has not repaid the $4,560 to the Plan.  (*See* Dace Aff. at ¶31.)  Nor does the record contain any evidence that Grimmett ever offered to repay the Plan.

## PROCEDURAL HISTORY

### A. Grimmett's Complaint in This Action

On August 29, 2013, Grimmett filed the instant action in Oakland County Circuit Court.  Grimmett's Complaint contains two causes of action: (1) legal malpractice against Birnkrant, Hall, and the Plan; and (2) breach of fiduciary duty against all Defendants.  (Compl. at ¶¶26-40.)

In the first cause of action, Grimmett alleges that Birnkrant and Hall committed legal malpractice by:

- failing to file a discrimination claim against Hidden Hills, as Grimmett had requested (Compl. at ¶28a);

- failing to file a defense to Hidden Hills' counterclaim (*id.* at ¶28b);

- using Jeffrey Dixon ("Dixon") as an expert witness at trial, despite Grimmett's request that Dixon not be used as a witness (*id.* at ¶28c);

- failing to file a defense to Hidden Hills' motion for costs (*id.* at ¶28d);[5]

- using the judgment of costs entered against Grimmett as leverage to coerce Grimmett into signing the Release (*id.* at ¶28f);

---

[5]   Grimmett alleges that Birnkrant and Hall failed to file the response "with the plan and idea that the oppressive costs would induce [him] into signing a waiver of liability."  (Compl. at ¶28e.)

8

- not advising Grimmett to seek independent legal counsel regarding the Release (*id.* at ¶28g);

- not filing a motion for costs on Grimmett's behalf (*id.* at ¶28h);

- "placing their own pecuniary and professional interests ahead of [Grimmett's] interest … by coercing him to sign [the Release]" (*id.* at ¶28i); and

- "failing to remedy a conflict of interest by negotiating a settlement on behalf of [the Plan] with an otherwise un-represented current client" (*id.* at ¶28j).[6]

Similarly, in his claim for breach of fiduciary duty, Grimmett asserts that Birnkrant and Hall "employed the help of Dace … in an effort to exert pressure on [him] to sign the [Release]" and that Dace, Birnkrant, and Hall "acting in concert … collectively coerced [him] to sign the [Release]." (*Id.* at ¶¶37, 39.)[7]  Grimmett asserts that Dace "never provided legal representation to [him], never advised [him] about his rights, and never explained the [Release] to him." (*Id.* at ¶38.)

### B. Removal and the Instant Motions

On August 29, 2013, Defendants removed the action to this Court. (*See* Notice of Removal.)  As the basis for removal, Defendants assert that "[c]laims against all Defendants in this action arise under and are preempted by" ERISA and

---

[6]  Although it is not clear from the Complaint, Grimmett apparently includes the Plan as a defendant in both the legal malpractice and breach of fiduciary duty claims under the theory of respondeat superior. (*See id.* at ¶¶32, 40.)

[7]  Grimmett also asserts that Birnkrant and Hall breached their duties of loyalty "by negotiating against [him] for their own pecuniary and personal interests." (*Id.* at ¶¶35.)

9

the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, *et seq.*  (*Id.* at ¶10.)

On November 27, 2013, Grimmett moved to remand the action to the Oakland County Circuit Court.  (Grimmett's Motion, ECF #7.)  In the same motion, Grimmett sought an award of attorney's fees under 28 U.S.C. § 1447(c) because, in Grimmett's view, "Defendants lacked an objectively reasonable basis for seeking removal."  (*Id.* at ¶14.)

Also on November 27, 2013, Defendants filed their motion to dismiss and for summary judgment.  (Defendants' Motion, ECF #8.)  Defendants' supported their motion with several affidavits and substantial documentary evidence. Grimmett did not respond with an affidavit addressing the facts, and he did not submit an affidavit under Fed. R. Civ. P. 56(d) explaining why affidavits and/or evidence were not available to him at this time.

The Court heard oral argument on both motions on July 16, 2014.  For the reasons discussed below, the Court now denies Grimmett's Motion and grants Defendants' Motion.

## <u>ANALYSIS</u>

### A. Remand is Not Warranted Because This Court Has Subject Matter Jurisdiction Over the Action

#### 1. Legal Standard Governing Motions to Remand and Complete Preemption Under ERISA

10

A civil action "brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). District courts have original jurisdiction over cases that arise under federal law. *See* 28 U.S.C. § 1331. "Ordinarily, determining whether a particular case arises under federal law turns on the well-pleaded complaint rule, *i.e.*, whether a federal question necessarily appears in the plaintiff's statement of his own claim." *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 612 (6th Cir. 2013) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (internal quotation marks omitted).

However, there is an exception to the well-pleaded complaint rule: when Congress "so completely preempts a particular area of law, the lawsuit arising under state law becomes federal in character." *Wright v. General Motors Corp.*, 262 F.3d 610, 613 (6th Cir. 2001) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). "This is so because when the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Davila*, 542 U.S. at 207-08 (citing *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) (internal punctuation marks omitted).

11

The Supreme Court has held that section 1132(a)(1)(B) of ERISA has complete preemptive effect. *Id.* at 209. That section provides that "[a] civil action may be brought … by a participant or beneficiary … to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[8] Any state-law claim that falls within the scope of section 1132(a)(1)(B) is completely preempted. *See Davila*, 542 U.S. at 209 (quoting *Metro. Life Ins. Co.*, 481 U.S. at 65-66). In other words, section 1132(a)(1)(B) completely preempts a state-law claim that "should be characterized as a superseding ERISA action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Wright*, 262 F.3d at 615 (citing *Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir. 1995)). When a state-law claim is completely preempted by Section 1132(a)(1)(B), it is deemed to be a

---

[8] Section 1132(a)(1)(B) "is part of a 'civil enforcement scheme' whose 'comprehensive' and 'carefully integrated' character 'provide[s] strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Gardner*, 715 F.3d at 613 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)).

federal claim and is therefore removable from state court to federal court. *See Gardner*, 715 F.3d at 612.[9]

Importantly, a plaintiff may not "elevate form over substance … to evade the preemptive scope of ERISA simply by relabeling [his] claims." *Davila*, 542 U.S. at 214 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985) (internal punctuation omitted). Indeed, "[i]t is not the label placed on a state law claim that determines whether it is [completely] preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991).

## 2. This Court Has Original Jurisdiction Over at Least Two of Grimmett's Claims

This Court has original jurisdiction over this action if at least one of Grimmett's claims is completely preempted by ERISA. And if this Court has original jurisdiction over the action, then removal was proper and the Court must deny – at least in part – Grimmett's Motion. *See*, *e.g.*, *Metro. Life Ins. Co.*, 481 U.S. at 67. Having considered the parties' arguments, the Court is satisfied that at

---

[9] This doctrine of "complete" preemption differs from "conflict" preemption. Conflict preemption "arises where compliance with both federal and state law is physically impossible." *Natn'l. Management Assoc. v. Transamerica Financial Resources, Inc.*, 197 F.Supp.2d 1016, 1019 (S.D. Ohio 2002). Conflict preemption is commonly asserted as an affirmative defense and does not, by itself, confer federal question subject matter jurisdiction. *Id.* (citing *Metro. Life Ins. Co.*, 481 U.S. at 63-64).

least one of Grimmett's claims against the Defendants is completely preempted by ERISA, and therefore this Court has subject matter jurisdiction over the action.[10]

>    **a. Grimmett's Legal Malpractice Claim Based on Birnkrant's and Hall's Failure to File a Discrimination Claim Against Hidden Hills is a Claim for ERISA Benefits and is Therefore Completely Preempted by ERISA**
>
>    **i. Framework for Analyzing Legal Malpractice Claims and ERISA Complete Preemption**

As noted above, ERISA completely preempts a plaintiff's state law cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Wright*, 262 F.3d at 615 (quoting 29 U.S.C. § 1132(a)(1)(B)). Grimmett's Motion requires this Court to decide whether his legal malpractice claim against Birnkrant and Hall is, in effect, a claim for benefits under the Plan and, accordingly, is completely preempted by Section 1132(a)(1)(B).

No party has cited precedent that is directly controlling here. Grimmett has cited cased holding that ERISA does not completely preempt legal malpractice

---

[10] Similar to ERISA, the LMRA also completely preempts state law claims that fall within its scope. *See, e.g.*, *Avco Corp. v. Aero Lodge No. 735, Intern. Assoc. of Machinists and Aerospace Workers*, 390 U.S. 557 (1968). Because the Court believes that complete preemption under ERISA is dispositive of Grimmett's Motion, the Court will not address complete preemption under the LMRA.

claims against attorneys who provide services *to ERISA plans*,[11] but that is not the issue here.  The question in this case – whether ERISA completely preempts legal malpractice claims against attorneys *provided by an ERISA plan to beneficiaries* – does not appear to be the subject of any controlling authority in this Circuit.[12] Indeed, there appear to be very few federal cases analyzing this precise question.

Federal courts have, however, analyzed whether ERISA completely preempts medical malpractice claims against ERISA plans and plan providers, and

---

[11]  *See, e.g.*, *United Wisconsin Life Ins. Co. v. Kreiner & Peters Co., L.P.A.*, 306 F.Supp.2d 743 (S.D. Ohio 2004) ("ERISA does not preempt state law malpractice and other tort claims involving professional services *rendered to an ERISA plan*") (internal citation omitted) (emphasis added); *Custer v. Sweeney*, 89 F.3d 1156, 1167 (4th Cir. 1996) ("[W]e do not believe that Congress intended ERISA to preempt state law malpractice claims involving professional services *to ERISA plans*") (emphasis added).)

[12]  Defendants cite two unpublished district court opinions for the proposition that ERISA completely preempts legal malpractice claims against a plan's attorneys. *See Taylor v. UAW-GM Legal Services Plan*, No. 09-cv-02186, 2010 WL 3245540 (N.D. Ohio 2010); *Pearce v. Bidwell*, No. 06-15642, 2007 WL 2463338 (E.D. Mich. 2007).  However, these cases are only marginally helpful to Defendants. *Taylor* involved a pro se plaintiff whose state-law malpractice claim the court found to be "frivolous."  *Taylor*, 2010 WL 3245540 at *2.  Moreover, in holding that ERISA completely preempted the malpractice claim against a plan attorney, the court in *Taylor* expressly limited its determination to the facts of that case.  *Id.* at *1.  ("This is not to say that all common law legal malpractice … claims against plan attorneys would be preempted by ERISA.")  Furthermore, in *Pearce*, the parties did not fully litigate the issue of complete preemption under ERISA.  *See* 2007 WL 2463338, at *2.  Indeed, the plaintiff did not contest removal of the action to federal court and did not even respond to defendants' motion for dismissal and summary judgment.  *Id.* at *3.  In granting defendants' motion, the court made no explicit finding on the issue of complete preemption.  *See id.*

15

the framework that federal courts have applied in those cases provides a useful guide.  In determining whether medical malpractice claims by ERISA plan participants are completely preempted, courts have "attempted to distinguish between claims directed at the *quality* of benefits received – that is, as to the treatment – which would not [be completely preempted], and claims that the plans erroneously withheld a *quantum* of benefits due – focusing on the administration of the plan – which would be completely preempted."  *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 446 (3d Cir. 2003) (citing *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 272 (3d Cir. 2001)).  *See also Dukes v. U.S. Healthcare*, 57 F.3d 350, 356 (3d Cir. 1995) (concluding that plaintiffs' claims of negligence against their doctors were not completely preempted under ERISA because plaintiffs "merely attack[ed] the *quality* of benefits they received … [and] simply [did] not claim that the [ERISA plan] erroneously withheld benefits due") (emphasis in original).  Although it does not appear that the United States Court of Appeals for the Sixth Circuit has applied the quality-quantity framework, at least one court in this District has employed it in evaluating whether a medical malpractice claim is completely preempted under ERISA.  *See Fritts v. Khoury*, 933 F.Supp. 668, 672 (E.D. Mich. 1996) (granting plaintiff's motion to remand and finding that "[f]or the reasons stated in *Dukes* … plaintiff's [medical malpractice]

16

claims cannot be characterized as ones to recover benefits due her under the terms of her plan").

### ii. Grimmett's Allegation That Birnkrant and Hall Failed to File Discrimination Claim Against Hidden Hills is a Claim for Benefits

Grimmett alleges that Birnkrant and Hall committed legal malpractice when they refused to file a discrimination claim against Hidden Hills even though he specifically asked them to do so. (*See* Compl. at ¶28a.) He insists that their refusal amounted to a "breach of their common law duties owed to [Grimmett pursuant to their] attorney-client relationship." (Pla.'s Br. in Resp. to Def's Mot., ECF #11 at 24, Pg. ID 1110.) Grimmett argues that this is a "garden variety" state-law malpractice claim, but upon closer inspection – and when viewed through the quantity/quality lens – the claim is more appropriately viewed as one for Plan benefits, not as a typical state malpractice claim.

The Plan's governing documents provide necessary context for analyzing Grimmett's claim. The Plan does not provide unlimited legal services to participants. Far from it. As relevant here, the Plan provides attorneys to litigate only a limited and specifically-identified set of actions. (*See* Legal Services Plan § 5.01, Pg. ID 255-59.) Critically, the Plan does *not* provide counsel to litigate discrimination claims on behalf of its participants. (*See id.*) Instead of providing a Plan attorney to litigate a participant's discrimination claim, the Plan refers the

17

participant to an outside attorney, and that attorney litigates the discrimination claim. (*See* Summary Plan Description at 20, Pg. ID 277.)[13]  Thus, Grimmett's request that Birnkrant and Hall file a discrimination claim against Hidden Hills was a request for services that were not available to Grimmett under the Plan.

In this context, it is clear that Grimmett's malpractice claim based on Birnkrant's and Hall's failure to file the discrimination claim cannot reasonably be viewed as an attack upon the quality of the legal services provided to him.  Under the clear terms of the Plan, filing a discrimination claim was not within the scope of Birnkrant's and Hall's representation of Grimmett; he was simply not entitled to have them file such a claim.  Likewise, the governing Plan documents did not allow Birnkrant and Hall to expend Plan resources litigating a discrimination claim on Grimmett's behalf.  Under these circumstances, their decision not to file such a claim cannot possibly be a qualitative error on their part.

Grimmett's malpractice claim based upon the failure to file the discrimination claim is best viewed as a complaint that the Plan did not provide the *quantity* of benefits Grimmett desired.  His real grievance is that the Plan should have provided the additional benefit of litigating a discrimination claim on his behalf.  His claim, in short, is best viewed as one "to recover benefits due to him

---

[13]  Defendants assert that Birnkrant and Hall in fact referred Grimmett to an outside attorney to handle his discrimination claim against Hidden Hills.  (*See* Hall First Aff. at ¶11.)

under the terms of [the Plan]." *Wright*, 262 F.3d at 615.[14]   Accordingly, the claim is completely preempted by ERISA, and that complete preemption vests this Court with original subject matter jurisdiction. *See Gardner*, 715 F.3d at 612.

### b. Grimmett's Breach of Fiduciary Duty Claim Against Dace and the Plan is Completely Preempted by ERISA

Having determined that at least one of Grimmett's claims is completely preempted, the Court need not analyze the remainder of Grimmett's claims for the purpose of deciding his motion to remand.   *See* Part A.3, *infra*.   However, the Court notes that ERISA completely preempts at least one more of Grimmett's allegations.   Specifically, ERISA completely preempts the claim that Dace and the Plan breached their fiduciary duties to Grimmett, and that claim is therefore within this Court's original jurisdiction.

It is well-established that ERISA completely preempts common law breach of fiduciary duty claims against ERISA fiduciaries.   *See, e.g., Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999).   In *Smith*, an ERISA plan participant alleged that a plan trustee who managed the participant's brokerage account – and

---

[14]   Grimmett styles his claim as based purely on Birnkrant's and Hall's common law duties, but a plaintiff may not "elevate form over substance … to evade the preemptive scope of ERISA simply by relabeling [his] claims."   *Davila*, 542 U.S. at 214 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)) (internal punctuation omitted).   That is precisely what Grimmett attempts to do in this case. Although Grimmett purports to bring a state law claim, the essence of his claim is that the Plan denied him a certain quantity of legal services.

19

was thus a fiduciary under ERISA[15] – removed securities from his account without his consent.  *See id*. at 611-12.  The participant brought common law breach of fiduciary duty claims against the trustee (among other defendants), and the defendants removed the action to federal court.  *Id.* at 612.  The Sixth Circuit held that a "claim for breach of fiduciary duty against the fiduciary of an ERISA plan necessarily presents a federal question.  Thus, [plaintiff's] state-law fiduciary duty claim is not only preempted but also provides federal subject-matter jurisdiction."  *Id.* at 613 (citing *Kramer v. Smith Barney*, 80 F.3d 1080, 1083-84 (5th Cir. 1996).  Accordingly, the Sixth Circuit found that removal of the common law breach of fiduciary duty claim to federal court was proper.  *Id.*

In this case, Defendants have presented evidence that both Dace and the Plan are ERISA fiduciaries,[16] and they argue that *Smith* compels the conclusion that ERISA completely preempts Grimmett's common-law breach of fiduciary duty

---

[15]  A person is an ERISA fiduciary if, *inter alia*, "he exercises any discretionary authority or discretionary control respecting management of such plan" or "he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  The Sixth Circuit found that the trustee in *Smith* was an ERISA fiduciary because it "controlled [p]lan assets."  *Smith*, 170 F.3d at 613.

[16]  Defendants assert that Dace is an ERISA fiduciary because he "exercises discretionary control and authority over the Plan's management, administration, and assets."  (Def.'s Br. in Resp. to Pla.'s Mot. at 23 (citing Dace Aff. at ¶¶4-5).)  Defendants assert that the Plan is itself an ERSIA fiduciary because "its entire function … is to administer the Plan's assets by providing legal service benefits for its members."  (*Id.*)

20

claims against Dace and the Plan.  (*See* Def.'s Br. in Resp. to Pla.'s Mot., ECF #12 at 23-24, Pg. ID 1176-77.)   Grimmett does not dispute that Dace is an ERISA fiduciary – and with good reason.  Indeed, Grimmett's claim against Dace arises from Dace's review and resolution of Grimmett's administrative appeal.  In other words, Grimmett challenges Dace's exercise of the very discretion that defines an ERISA fiduciary.  *See* 29 U.S.C. § 1002(21)(A).  Grimmett also does not dispute that the Plan is an ERISA fiduciary.  Nor has Grimmett identified any basis on which Dace or the Plan owed him a fiduciary duty other than under ERISA.  And although the facts in *Smith* are not directly on point – indeed, in *Smith*, the defendant ERISA fiduciary was an outside service provider to the ERISA plan, whereas in this case the defendants are an ERISA plan officer and the ERISA plan itself – Grimmet has not presented any arguments why the general rule of *Smith* should not govern here.

Accordingly, the Court finds that ERISA completely preempts Grimmett's breach of fiduciary duty claim against Dace and the Plan.  This claim therefore provides an independent basis for this Court's original jurisdiction over the action.

### 3.  This Court Chooses to Exercise Supplemental Jurisdiction Over Any of Grimmett's Claims That ERISA Does Not Completely Preempt and Denies the Motion to Remand

Having determined that ERISA completely preempts at least one of Grimmett's claims and thereby gives this Court subject matter jurisdiction, this

Court may exercise supplemental jurisdiction over the remainder of Grimmett's claims under 28 U.S.C. § 1367.  That statute provides in relevant part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related … that they form part of the same case or controversy…."  28 U.S.C. § 1367(a).  Here, all of Grimmett's claims arise out of the same case or controversy – namely, the Plan's representation of Grimmett in his proceeding against Hidden Hills.  Indeed, at oral argument on Grimmett's Motion, Grimmett's counsel acknowledged that if ERISA preempts even one Grimmett's claims, then section 1367(a) would authorize the Court to exercise subject-matter jurisdiction over the entire action.

For the reasons discussed above, this Court has original jurisdiction over the action, and it chooses to exercise supplemental jurisdiction over any of Grimmett's claims that federal law does not completely preempt.  *See* 28 U.S.C. § 1367(a); *see also* 28 U.S.C. § 1441(c) (providing for removal of entire case when one claim presents a federal question).  Accordingly, Grimmett's Motion is denied in its entirety, and the Court will reach the merits of Defendants' motion to dismiss or for summary judgment.

**B. Defendants Are Entitled to Summary Judgment on Each of Grimmett's Claims[17]**

**1.  Legal Standard Governing a Motion for Summary Judgment**

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.*  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252.  However, summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Id.* at 251-252.  Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

---

[17]  In ruling on Defendants' Motion, the Court has considered matters outside of the pleadings.  Accordingly, the Court will treat Defendants' Motion as a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d).

23

**2. Grimmett's Claims Are Barred by the Tender-Back Rule Because He Did Not Repay the Consideration Recited in the Release Prior to Filing Suit**

The Court has little difficulty concluding that Defendants are entitled to summary judgment on all of Grimmett's claims.   Grimmett unequivocally "waive[d] any claims and fully and forever release[d] [Birnkrant and Hall] and [the Plan], and any other of the Plan's employees … and administrators, from any and all claims and causes of action … regarding representation provided [in Grimmett's action against Hidden Hills]."   (Release at 1.)   Grimmett does not dispute that the causes of action in his Complaint are within the scope of the Release.   Thus, Grimmett may maintain his suit only if he is able to avoid the Release.   That he cannot do.   Indeed, under the well-established "tender-back" rule, Grimmett cannot escape the Release because he did not tender back the consideration recited in the Release before filing the instant action.

As the Michigan Supreme Court held in *Stefanac v. Cranbrook Educational Community*, 458 N.W. 2d 56 (Mich. 1990), the tender-back rule provides that "when a plaintiff has entered into a settlement agreement[,] tender of consideration recited in the agreement must occur … prior to or simultaneously with the commencement of any proceeding raising a legal claim in contravention of the agreement."   458 N.W. 2d at 58.   In *Stefanac*, a teacher resigned from a school and, in exchange for severance pay, signed a waiver that released "any and all

24

claims" against the school related to her employment and resignation. *Id.*
Thereafter – and without returning the severance pay – the teacher filed a lawsuit
against the school, alleging (among other things) wrongful discharge and sex
discrimination. *Id.* In affirming dismissal of the teacher's complaint, the court
reiterated "the general and salutary rule that one repudiating or seeking to avoid a
compromise or release, and thereby revert to the original right of action, must place
the other party *in statu quo*." *Id.* at 60 (quoting *Kirl v. Zinner*, 264 N.W. 391
(1936). The court stressed that a party "is not entitled to retain the benefit of an
agreement and at the same time bring suit in contravention of that agreement." *Id.*
at 66. The tender back rule from *Stefanac* is clear: "the plaintiff must tender the
recited consideration before there is a right to repudiate the release." *Id.*

In this case, as in *Stefanac*, Grimmett did not tender back the consideration
recited in the Release prior to filing his lawsuit. (*See* Dace Aff. at ¶31.) Indeed,
Grimmett's counsel admitted at oral argument that, to date, Grimmett still has not
placed the Plan in statu quo by repaying the $4,560 judgment. Under a
straightforward application of the tender-back rule, therefore, Grimmett may not
bring legal claims that he waived in the Release, and Defendants are entitled to
judgment as a matter of law.[18]

---

[18] The Sixth Circuit has applied the tender-back rule to bar ERISA claims. *See
Samms v. Quanex Corp.*, 1996 WL 599821, 99 F.3d 1139 (6th Cir. 1996)

The *Stefanac* court recognized two narrow exceptions to the tender-back rule, but neither exception is relevant to this case. First, the tender-back rule does not apply when a defendant excuses plaintiff's obligation to repay the consideration recited in the release. *Stefanac*, 458 N.W. 2d at 60. That certainly is not the case here. Second, "fraud in the execution" of a release excuses plaintiff from tendering back consideration prior to challenging the release. *Id.* Such fraud occurs when a defendant "induc[es] [the plaintiff] to sign a release under the belief that he was signing something else." *Id.* (quoting *Randall v. Port Huron, St. C. & M.C.R. Co.*, 184 N.W. 435, 437 (Mich. 1921)). In this case, Grimmett has not alleged that he signed the Release under the mistaken belief that he was signing something else. To the contrary, it appears that Grimmett knew *exactly* what he was signing. Indeed, after Dace informed him of the Plan's offer to settle, Grimmett protested that "[i]t doesn't seem ethical [for Defendants] to coerce [him] to sign the waiver in order for the judgment to get paid." (Grimmet Letter to Hall at 2.) Grimmett knew that he was waiving his rights to sue Defendants, and the Plan did not induce Grimmett to sign the Release under the belief that he was

_____

(unpublished table opinion) (affirming district court's dismissal of plaintiff's complaint against former employer for alleged breach of fiduciary duty under ERISA because plaintiff had not tendered back severance pay received in connection with a settlement agreement). Grimmett has not argued, nor cited any authority for the proposition, that the tender-back rule does not apply to ERISA claims.

signing something else.  Accordingly, neither exception to the tender-back rule is applicable here.

Grimmett offers two arguments as to why the Release does not bar his suit even though he did not tender back the consideration for the Release.  First, Grimmett asserts that the Release is void because Defendants coerced him into signing it, and he insists that a void release is no bar to an action.  (*See* Pla.'s Br. in Resp. to Def.'s Mot., ECF #11 at 27-28, Pg. ID 1113-14.)   But the Michigan Supreme Court rejected this same argument in *Stefanac*.  Citing *Kirl*, the court in *Stefanec* said that the tender-back rule applies "even [if] the contract was … obtained under duress."  *Stefanac*, 458 N.W. 2d at 61 (citing *Kirl*, 264 N.W. at 391).  Indeed, until the repudiating party tenders back the consideration recited in the settlement agreement, "the settlement will constitute a good defense" – *even where the repudiating party contends that he was coerced into signing the settlement*.  *Id.* (quoting *Kirl*, 264 N.W. at 391).  Accordingly, Grimmett's allegation that the Release is void does not excuse him from complying with the tender back rule.  Because he did not comply with that rule, the allegedly-void Release remains a complete bar to Grimmett's claims.

Next, at oral argument, Grimmett's counsel argued – for the first time –that the Court should excuse Grimmett's noncompliance with the tender-back rule because Grimmett cannot afford to repay the Plan.  This argument is unavailing.

*Stefanac* does not contain an exception for a releasing party who cannot afford to repay the consideration recited in a release.  And Grimmett's counsel admitted that he looked for, but could not find, any precedent applying such an exception to the tender-back rule.  Moreover, even if there were an exception to the tender-back rule for a party who cannot afford to pay (and there is not), there is simply no evidence in the record that Grimmett is unable to repay $4,560 to the Plan.  Accordingly the tender-back rule precludes Grimmett from avoiding the release he signed.

Finally, it is of no consequence that the consideration in the Release was paid to a third party, rather than to Grimmett, who gave the Release.  Indeed, the focus of the tender back rule is upon the status of the party *to whom the release was given* – more specifically, as to whether that party has been placed in statu quo prior to the commencement of litigation.  *See id.* at 60 (quoting *Kirl* 264 N.W. at 391).  Thus, a plaintiff seeking to avoid a release must tender back any consideration paid by the released party on his behalf, including consideration that was not paid directly to him.  That the Plan paid the $4,560 consideration recited in the Release directly to Hidden Hills' attorneys rather than to Grimmett does not make the tender back rule any less applicable in this case.

That is precisely what the Michigan Court of Appeals held in *Newhouse v. Sturrus*, No. 294734, 2010 WL 5175201, (Mich. Ct. App. Dec. 21, 2010)

28

(unpublished opinion).  In that case, the court held that the tender-back rule barred plaintiff's suit because she (1) released her claims against the defendant in exchange for $15,000 to be paid to her attorney in satisfaction of her outstanding fees, and (2) did not repay the $15,000 to the defendant before filing her lawsuit. The court noted that although "the $15,000 may have bypassed plaintiff to her attorney, plaintiff received the benefit of payment of her outstanding attorney fees, and defendant was out of $15,000." *Id.* at *4.  Despite the fact that plaintiff *herself* never received the consideration recited in the release, the *Newhouse* court held that plaintiff had to place defendant in statu quo before challenging the release.  *Id.* Similarly, in order to challenge the Release, Grimmett was obligated by the tender-back rule to restore the Plan to its *ex ante* position by repaying the $4,560. Because he did not do so, he may not maintain the instant action.

In sum, Grimmett waived and released each of the claims in his Complaint by signing the Release.  Under the tender-back rule, Grimmett is not permitted to challenge the validity of the Release in this action because he did not repay the consideration recited in the Release prior to filing suit.  Therefore, the Release is a complete and effective defense to each of Grimmett's claims, and Defendants are entitled to summary judgment on the entire Complaint.[19]

---

[19]   Summary judgment is warranted even though the parties have not yet engaged in discovery.  Indeed, discovery would not change the result.  Grimmett has

## CONCLUSION

For all of the reasons stated in this Opinion and Order, **IT IS HEREBY ORDERED** that Grimmett's Motion (ECF #7) is **DENIED** and Defendants' Motion (ECF #8) is **GRANTED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  July 28, 2014

---

conceded the one fact that is essential to summary judgment – that he did not tender back consideration to the Plan – and thus discovery would not provide relevant evidence on the single dispositive issue in this case.  *See, e.g.*, *Maki v. Laakko*, 88 F.3d 361, 367 (affirming district court's grant of summary judgment prior to close of discovery "[b]ecause further discovery would not have changed the legal and factual deficiencies" in plaintiff's claims).

Even absent Grimmett's admission that he did not tender back consideration, summary judgment would still be warranted.  In opposing Defendants' Motion, Grimmett failed to file a single factual affidavit, and he did not file an affidavit under Fed. R. Civ. P. 56(d) (formerly Rule 56(f)) explaining his "need for discovery [and] what material [he] hopes to uncover."  *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (internal citation omitted).  Although Grimmett's counsel asserted at oral argument that Grimmett would present relevant evidence following discovery, "failure to file an affidavit under Rule [56(d)] is sufficient grounds to reject" a plaintiff's opposition to a motion for summary judgment on the basis that he was unable to engage in discovery."  *Id.* (quoting *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  "Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule [56(d)] by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate."  *Id.* (quoting *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 832-33 (10th Cir. 1986)).

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 28, 2014, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113